UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

RICARDO ALMENTEROS,

             Plaintiff,             **DECISION AND ORDER**

    v.

                                     6:22-CV-06236 EAW

WENDE SUPERINTENDENT
ECKERT,

             Defendant.
_____

# INTRODUCTION

*Pro se* plaintiff Ricardo Almenteros ("Plaintiff") commenced this action pursuant to 42 U.S.C. § 1983 asserting claims that arose while he was incarcerated at Wende Correctional Facility ("Wende"). (Dkt. 1). Presently before the Court is a motion for summary judgment (Dkt. 59) filed by defendant Wende Superintendent Eckert ("Defendant"). For the following reasons, Defendant's motion for summary judgment is granted in part and denied in part.

# BACKGROUND

## I. Factual Background

The following facts are taken from Defendant's Rule 56 Statement of Material Facts (Dkt. 59-1), Plaintiff's Opposition to Defendant's Statement of Material Facts (Dkt. 63), Plaintiff's amended complaint (Dkt. 6), and the declarations and exhibits submitted by the parties. The Court has noted the relevant factual disputes.

Plaintiff's claims arise from his alleged exposure to asbestos while at Wende. On or about October 29, 2020, Plaintiff was transferred to Wende and assigned to C-Block, 14-company, 8 cell. (Dkt. 63 at 41). Plaintiff observed workers enter his cell block and begin removing asbestos, which caused large amounts of dust to cover the area. (*Id.* at 42). Many inmates started coughing and complained of having trouble breathing from the dust. (*Id.* at 42). Along with difficulty breathing, Plaintiff also suffered blurry vision and trouble swallowing. (*Id.* at 42). The removal area was mostly concealed by a white plastic covering but Plaintiff managed to see that there were gaps allowing air to enter and exit the area, which allowed for contamination of the larger area with asbestos fibers. (Dkt. 59-1 at ¶ 9; Dkt. 63 at 7). Prior to his incarceration, Plaintiff was licensed to remove asbestos in New York state for several years, although his licensing expired in 2015. (Dkt. 59-1 at ¶7; Dkt. 63 at 4-5). Plaintiff alleges that this experience provided him with knowledge that the contractors were not following necessary safety protocols for asbestos removal. (Dkt. 63 at 4-5).

On November 2, 2020, Plaintiff filed a grievance noting that the asbestos removal was not done properly and that dust was all over the cell block. (Dkt. 63 at 42: Dkt. 63-1 at 1). The same day, he wrote to Defendant noting that the asbestos removal was a safety violation and advised that he has a high-risk medical condition and was concerned about the environmental impacts. (Dkt. 63-1 at 2). Plaintiff's medical conditions included end-stage renal disease, hypothyroidism, and lupus. (Dkt. 59-1 at ¶ 10). Plaintiff receives regular dialysis and is prescribed several different medications for these conditions. (Dkt. 59-1 at ¶ 11). On November 12, 2020, Plaintiff wrote to Defendant about the unsafe

environment due to his medical conditions and advised that he had filed a grievance but got no response. (Dkt. 63 at 42; Dkt. 63-1 at 4). Defendant does not recall receiving these letters. (Dkt. 59-1 at ¶ 3; Dkt. 59-3 at ¶ 7).

Thereafter, Plaintiff was transferred from C-Block and ultimately moved to D-Block, and he decided not to continue with the grievance process. (Dkt. 63 at 42-43; Dkt. 59-1 at ¶ 2). But not long after his transfer, contractors began to remove asbestos in D-Block. (Dkt. 63 at 43).

On April 6, 2021, Plaintiff filed a grievance related to the asbestos removal in D-Block. (Dkt. 63 at 43; Dkt. 63-1 at 44). On April 22, 2021, the grievance was denied on the grounds that it was untimely because it was deemed related to his 2020 housing location. (Dkt. 63 at 43; Dkt. 63-1 at 26). On April 26, 2021, Plaintiff responded to the inmate grievance supervisor, noting that it was not untimely because it was a new grievance and asked that it be filed for processing. (Dkt. 63-1 at 45). On May 10, 2021, Plaintiff appealed the April 6, 2021 grievance to Defendant, asking that proper asbestos abatement protocols be followed and seeking transfer from the unit until the work wass completed. (*Id.* at 46). On May 27, 2021, the inmate grievance program supervisor advised that Plaintiff's grievance was untimely because as explained in the denial on April 22, 2021, it related to Plaintiff's housing in November 2020. (Dkt. 63 at 44; Dkt. 63-1 at 22).

On May 24, 2021, Plaintiff filed a second grievance about the asbestos removal taking place in D-Block. (Dkt. 63 at 43-44; Dkt. 63-1 at 47). On June 23, 2021, Plaintiff wrote several letters to Defendant advising that his grievances had not been filed and processed and noted that it was a different grievance from his complaints about the C-

Block.  (Dkt. 63 at 44; Dkt. 63-1 at 48; Dkt. 63-1 at 49; Dkt. 59-1 at ¶ 24).  On July 8, 2021, Plaintiff alleges that he appealed to the Central Office Review Committee ("CORC") for the constructive denial of the May 24, 2021 grievance.  (Dkt. 63 at 44; Dkt. 63-1 at 50; Dkt. 59-1 at ¶ 26).  Plaintiff has the certified receipt for this mailing, which appears to show it was received by the CORC on July 15, 2021, but Defendant contends that an appeal to the CORC was never received.  (Dkt. 63 at 46; Dkt. 63-1 at 24; Dkt. 59-1 at ¶ 1).

Plaintiff was seen on May 7, 2021, by Abdul R. Chaudhry, M.D., who diagnosed him with dysphagia, a swallowing disorder.  (Dkt. 63-1 at 14; Dkt. 59-1 at ¶ 12).  Dr. Chaudhry indicated that the cause of dysphagia was of unknown origin, and scheduled Plaintiff for an endoscopy.  (Dkt. 59-1 at ¶ 12).  An endoscopy was conducted on July 15, 2021, and Dr. Chaudhry concluded that "there is no upper GI pathology to account for his dysphagia."  (*Id.* at ¶ 13).  When receiving treatment for an AV fistula in June 2021, Plaintiff denied any current medical complaints.  (*Id.* at ¶ 15).

Defendant alleges that he has no personal knowledge of asbestos removal best practices or training in asbestos removal and did not have supervisory authority over the contractors performing the asbestos remediation work at Wende.  (Dkt. 59-1 at ¶ 28).

## II.   Procedural Background

Plaintiff commenced the instant action on May 22, 2022.  (Dkt. 1).  On December 27, 2022, the Court screened the complaint and dismissed certain claims, but permitted Plaintiff leave to amend.  (Dkt. 5).  Plaintiff filed an amended complaint on February 6, 2023.  (Dkt. 6).  On November 6, 2023, the Court screened the amended complaint and permitted Plaintiff's claim against Defendant to proceed to service.  (Dkt. 8).

On March 27, 2024, Defendant filed a motion for summary judgment in lieu of answer on grounds that Plaintiff failed to exhaust his administrative remedies. (Dkt. 12). In response, Plaintiff provided documents relating to grievances he filed, prompting Defendant to move to withdraw the motion, which the Court granted on May 23, 2024. (Dkt. 18). Defendant filed an answer on June 24, 2024. (Dkt. 19).

Following discovery, Defendant filed the instant motion for summary judgment. (Dkt. 59). Plaintiff was granted an extension of time to respond (Dkt. 62), which he did on May 16, 2025 (Dkt. 63). On May 20, 2025, Defendant filed his reply. (Dkt. 64).

## DISCUSSION

I. **Legal Standards**

A. **Motion for Summary Judgment**

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, it finds that no rational jury could find in favor of that party. *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

"The moving party bears the burden of showing the absence of a genuine dispute as to any material fact. . . ." *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486 (2d Cir. 2014). "Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the evidentiary

materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial." *Johnson v. Xerox Corp.*, 838 F. Supp. 2d 99, 103 (W.D.N.Y. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (quoting *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011)). Specifically, the non-moving party "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown*, 654 F.3d at 358. Indeed, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

### B. Section 1983 Claims

"To succeed on a section 1983 claim, Plaintiff must prove two essential elements: (1) defendants . . . acted under color of state law; and (2) as a result of their actions, Plaintiff suffered a denial of his federal statutory or constitutional rights or privileges." *Sampson v. City of Schenectady*, 160 F. Supp. 2d 336, 342 (N.D.N.Y. 2001); *see Annis v. Cnty. of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Okla. City v. Tuttle*, 471 U.S. 808, 816 (1985)).

"To 'establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation.'" *Kravitz v. Purcell*, 87 F.4th 111, 129 (2d Cir. 2023) (quoting *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013)). The theory of respondeat superior is unavailable in a § 1983 action. *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004); *Flannery v. Cnty. of Niagara*, 763 F. Supp. 3d 364, 426 (W.D.N.Y. 2025) ("A plaintiff's pleading therefore 'may not depend on a theory of supervisory liability,' because 'government officials may not be held liable [under § 1983] for the unconstitutional conduct of their subordinates under a theory of respondeat superior.'" (quoting *McCluskey v. Roberts*, 2022 WL 2046079, at *3 (2d Cir. June 7, 2022))). "Instead, a plaintiff must . . . prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (citation modified).

## II.    Exhaustion of Administrative Remedies

As a threshold matter, Defendant argues that he is entitled to summary judgment on Plaintiff's claims because Plaintiff never exhausted his administrative remedies. As to any claims related to the asbestos removal in the C-Block in 2020, the Court agrees. But as discussed below, issues of fact prevent resolution of whether Plaintiff's grievances regarding the asbestos removal in the D-Block in 2021 were exhausted and Defendant has not established that summary judgment is appropriate on the present record.

The Prison Litigation Reform Act of 1995 ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other

Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

To satisfy the PLRA's exhaustion requirement, a plaintiff must demonstrate the "proper exhaustion of administrative remedies." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). "Compliance with prison grievance procedures . . . is all that is required by the PLRA to 'properly exhaust.'" *Jones v. Bock*, 549 U.S. 199, 218 (2007). As such, "[t]he exhaustion inquiry . . . requires that [the court] look at the state prison procedures and the prisoner's grievance to determine whether the prisoner has complied with those procedures." *Espinal v. Goord*, 558 F.3d 119, 124 (2d Cir. 2009).

"Exhaustion is mandatory—unexhausted claims may not be pursued in federal court." *Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011). However, "[f]ailure to exhaust administrative remedies is an affirmative defense . . . and when raised as a basis for summary judgment, the defendant 'bears the initial burden of establishing, by pointing to legally sufficient sources such as statutes, regulations, or grievance procedures, that a grievance process exists and applies to the underlying dispute.'" *Deleon v. Ayers*, No. 16-CV-6848L, 2023 WL 171889, at *2 (W.D.N.Y. Jan. 12, 2023) (quoting *Hubbs v. Suffolk Cnty. Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015)); *Mann v. Martingano*, No. 919CV478(LEK/TWD), 2020 WL 872441, at *3 (N.D.N.Y. Jan. 30, 2020) ("Because non-exhaustion is an affirmative defense, the defendant bears the burden of showing that an

inmate has failed to satisfy the exhaustion requirements."), *report and recommendation adopted*, 2020 WL 871181 (N.D.N.Y. Feb. 21, 2020).

In New York, proper exhaustion entails going through a three-step appeal procedure set out in 7 N.Y.C.C.R. § 701.5. *Garraway v. Smith*, No. 12-CV-924S, 2020 WL 491328, at *4 (W.D.N.Y. Jan. 30, 2020). This section provides:

> (1) the inmate must submit a written complaint to the Grievance Clerk within 21 calendar days of the alleged occurrence; the Grievance Clerk then submits the complaint to the Inmate Grievance Resolution Committee ("IGRC") for investigation and review; (2) if the IGRC denies the grievance, the inmate may appeal to the superintendent of the facility by filing an appeal with the [Grievance Clerk]; (3) after the superintendent issues a decision, the inmate may appeal to CORC, which makes the final administrative determination.

*Id.* An inmate may only seek relief under § 1983 "[i]f all three levels of review are exhausted." *Id.*

"[I]nmates must provide enough information about the conduct of which they complain to allow prison officials to take appropriate responsive measures." *Johnson v. Testman*, 380 F.3d 691, 697 (2d Cir. 2004). DOCCS Directive 4040, which Defendant cites in his papers, pertains to the Inmate Grievance Program, and requires that the contents of the grievance "contain a concise, specific description of the problem and the action requested and indicate what actions the grievant has taken to resolve the complaint." N.Y. C.C.R.R. § 701.5. "This requirement, the Second Circuit has held, is analogous to the requirements of notice pleading." *Solano v. Aubin*, No. 9:20-CV-1378 (BKS/ML), 2023 WL 5200397, at *5 (N.D.N.Y. Aug. 14, 2023) (citing *Brownell v. Krom*, 446 F.3d 305, 310 (2d Cir. 2006)). "As in a notice pleading system, the grievant need not lay out the facts,

articulate legal theories, or demand particular relief[;] [a]ll the grievance need do is object intelligibly to some asserted shortcoming." *Johnson*, 380 F.3d at 697 (citation modified).

But exhaustion is not required in instances: "(1) where the administrative procedure operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates; (2) where the process is so opaque that it becomes, practically speaking, incapable of use; and (3) when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Milhouse v. City of New York*, No. 24-CV-611 (LAK)(KHP), 2025 WL 3643694, at *4 (S.D.N.Y. Nov. 26, 2025) (citation modified), *report and recommendation adopted*, 2025 WL 3642399 (S.D.N.Y. Dec. 16, 2025). "The Second Circuit has explained that, where a prisoner provides a grievance to a correctional officer who never files it, an administrative remedy can be 'unavailable' if the regulations 'do not adequately outline the process to appeal or otherwise exhaust administrative remedies.'" *Ford v. Aramark*, No. 18-CV-2696 (NSR), 2020 WL 377882, at *4 (S.D.N.Y. Jan. 23, 2020) (quoting *Williams v. Correction Officer Priatno*, 829 F.3d 118, 124 (2d Cir. 2016)).

In support of his argument that Plaintiff failed to exhaust his administrative remedies, Defendant makes much of the fact that several of Plaintiff's grievances and letters were unsigned, and do not contain Plaintiff's name, DIN number, or cell location, as required by Directive 4040. Notably, none of these purported procedural flaws were raised in any of the responses that Plaintiff received from Wende officials as a basis to deny the relief sought. Nor has Defendant cited a single case for the proposition that such omissions would alone warrant summary judgment on exhaustion grounds. And to the

contrary, Plaintiff avers that the identifying information was all contained on the envelope which held the grievance documents, which he argues is corroborated by the fact that he received responses to several of those filings and raises a question of fact as to the sufficiency of his filings.  For all of these reasons, Defendant has not established that any technical flaws in the grievance documents support summary judgment in his favor.

Defendant also argues that Plaintiff's grievances relating to the D-Block were not exhausted because Plaintiff did not complete the third step of the appeal process by appealing them to the CORC.  Defendant attaches a certification with exhibits from Rachel Seguin, the DOCCS Director of the Incarcerated Grievance Program, who certifies that a search of the IGRC revealed no grievances filed by Plaintiff were appealed to or received by the CORC.  (Dkt. 59-4 at 165-67).  The printout from the CORC database submitted by Ms. Seguin shows no active or closed cases appealed to CORC by Plaintiff.  (*Id.*).

Plaintiff concedes that he did not appeal the grievance he filed related to the asbestos removal in the C-Block in 2020, and the Court agrees with Defendant that summary judgment as to any claims arising from that grievance is warranted.

The question is closer with respect to Plaintiff's grievances relating to his time in the D-Block.  The documents before the Court suggest that Plaintiff's April 6, 2021 grievance was denied on April 22, 2021, on the grounds that it was untimely because it related to the events in the C-Block from 2020.  (*See* Dkt. 63-1 at 26 ("As you are grieving your housing location from November 2020, this issue is untimely by Directive.")).  Plaintiff questions whether this grievance was filed and processed and the Court notes that the response refers to Plaintiff's submission as "correspondence" rather than a grievance,

and does not reference a grievance filing number. (*Id.*). The response also did not provide any information as to the process to appeal. (*Id.*). On April 26, 2021, Plaintiff responded to the grievance supervisor to explain that he intended this grievance to relate to his current housing situation, and on May 10, 2021, Plaintiff appealed this grievance to the Superintendent. On May 27, 2021, Plaintiff received a denial of his appeal, again on grounds that it was untimely and finding that the grievance related to the 2020 C-Block asbestos remediation. (*See* Dkt. 63-1 at 22 ("As your complaint is in regards to your housing location in November of 2020, you have exceeded the time frame set forth by Directive.")). The denial again refers to Plaintiff's submission as "correspondence" rather than a formal grievance, and again did not contain a grievance number or contain information about Plaintiff's right to appeal. On May 28, 2021, Plaintiff wrote to Anthony Annucci, the Acting Commissioner of DOCCS (Dkt. 6-1 at 9) about the denial of his grievance, although he does not contend that he also appealed the April 6th grievance to the CORC, as required. Although in general the Court would agree with Defendant that this grievance, interpreted by DOCCS to relate to the C-Block remediation, was not fully exhausted based on the failure to appeal it to the CORC, *Petit v. Bender*, No. 99 CIV. 0969 (SHS), 2000 WL 303280, at *1 (S.D.N.Y. Mar. 22, 2000) (holding that plaintiff's letter to Commissioner protesting the Superintendent's denial of his grievance did not constitute compliance with directive to appeal to CORC), here, it is not clear to the Court on the current record that the initial grievance was ever filed and processed in a manner that would require Plaintiff's strict adherence to this Directive.

And more importantly, Plaintiff filed a second grievance on May 24, 2021. The second grievance is referred to by Plaintiff as "an ongoing and continuing grievance regarding proper asbestos protocols not being followed." (Dkt. 63-1 at 47). In this grievance, Plaintiff states that "[s]ince starting the asbestos abatement in D Block, there has not been any negative air-flow protocol put in place" and "[n]o air-flow generator and vents to channel and keep asbestos fibers from blowing in the air." (*Id.*). He further notes that "[a]batement workers walk around without proper abatement attire; fibers on the walls, ceilings, floor, and spread in the cells," and are "conducting a dangerous removal in violation of law." (*Id.*). Plaintiff did not receive any response to this grievance and on June 23, 2021, he appealed to Defendant and noted his concern that his grievances had not been filed and processed. (*Id.* at 48 ("I recently filed a grievance which has not been processed or filed. On May 24, 2021, I filed a grievance concerning ongoing and continuing asbestos abatement removal in the D-Block housing unit. This is a totally different grievance than the one I attempted to file when I was in the C-Block Housing Unit. I would appreciate it if my grievance is filed and processed in a timely manner you see to it that it does.")). Plaintiff also received no response to this appeal. Plaintiff contends that as a result, on July 8, 2021, he sent an appeal to the CORC. In his July 8, 2021 letter to the CORC, Plaintiff again noted his concern that his grievance was never processed or filed and that he never received a hearing. (Dkt. 63-1 at 50-53). Plaintiff supports this allegation with a certified receipt which documents a mailing by him to the CORC on that same date and the receipt shows that it was received by the CORC on July 15, 2021.

Defendant first urges the Court to rely on Ms. Seguin's certification to conclude that Plaintiff appealed neither grievance to the CORC and thus the complaints are unexhausted. But Defendant has no explanation for Plaintiff's possession of a certified mail receipt showing that Plaintiff's letter was signed by someone at the CORC on July 15, 2021. That DOCCS records show no record of any appeal from Plaintiff cannot be easily reconciled with Plaintiff's certified mail receipt and supports Plaintiff's theory that the grievances were never filed or processed as he requested.

Alternatively, Defendant contends that if Plaintiff mailed the appeal to the CORC on July 8, 2021, that such an appeal was premature because he waited only sixteen days from his appeal to the Superintendent before mailing it, rather than waiting the requisite 20 days. Defendant offers no legal support for this position, particularly when Plaintiff was appealing a constructive denial and was not provided with any appeal information. At the very least, these unanswered questions leave the Court unable to resolve whether Plaintiff properly exhausted his administrative remedies on this claim or whether any exception to the exhaustion requirement applies to these proceedings. Accordingly, Defendant's motion for summary judgment on this ground is denied.[1]

---

[1]  The Court notes that Defendant did not request a hearing on this question and instead, argued that a hearing was unnecessary. (Dkt. 59-5 at 10). To the extent Defendant still wishes to pursue this defense, he may raise the appropriateness of a pre-trial hearing to resolve these questions. *Hubbert v. Monroe Cnty. Sheriff's Dep't*, No. 22-CV-1009-LJV-JJM, 2025 WL 2157982, at *3 (W.D.N.Y. July 30, 2025) (denying motion for summary judgment on exhaustion grounds without prejudice to permitting them to request a hearing on exhaustion before jury trial and collecting cases permitting same). Were the Court to permit such a hearing, Defendant would need to be prepared to provide more information to the Court regarding the certified mail sent to the CORC as well as information confirming whether Plaintiff's grievances were formally accepted and filed.

## III. Eighth Amendment Deliberate Indifference Claim

As noted, Plaintiff's sole claim against Defendant is an Eighth Amendment conditions of confinement claim. It includes an objective prong and subjective prong. Defendant has not met its burden of establishing his entitlement on either prong.

### A. Objective Element: Asbestos Exposure

As relevant here, a prisoner who alleges that "he was exposed to friable asbestos while incarcerated . . . and [that] defendants knowingly failed to protect him from such exposure" may set forth a viable Eighth Amendment claim. *LaBounty v. Coughlin*, 137 F.3d 68, 72 (2d Cir. 1988). But "an inmate must be exposed to an unreasonably high concentration of air-borne asbestos particles in order to state a cognizable claim under the Eighth Amendment." *Johnakin v. NYC Dep't of Corr.*, No. 11-CV-4897, 2013 WL 5519998, at *17 (E.D.N.Y. Sept. 30, 2013)); *see also Patterson v. Colon*, No. 02-CV-9317 (CS), 2022 WL 563860, at *3 (S.D.N.Y. Feb. 24, 2022) ("The concentration of asbestos must be unreasonably high, meaning the intensity and duration of the exposure must both be significant." (citation modified)); *Pack v. Artuz*, 348 F. Supp. 2d 63, 79-80 (S.D.N.Y. 2004) ("The health risk posed by friable asbestos has been acknowledged by various courts, which have held that inmates' unwilling exposure to an unreasonably high concentration of air-borne asbestos particles constitutes a cognizable claim under the Eighth Amendment. . . . For exposure to airborne asbestos fibers to create a substantial risk of serious harm,

---

The parties would also have to address if, as Plaintiff argues, his attempts to file grievances were ignored and not filed as he requested, and whether those circumstances amounted to one of the exceptions to the exhaustion requirement.

however, the intensity and duration of the exposure must both be significant." (citation modified)).

Defendant contends that there is no evidence that Plaintiff was exposed to an unreasonably high concentration of airborne asbestos particles and maintains that Defendant was advised that the asbestos removal was performed properly and within all regulatory guidelines. (Dkt. 59-3 at ¶ 9). But Defendant has come forward with no evidence on which the Court could conclude that the conditions created by the asbestos removal in D-Block were safe and otherwise met safety standards for asbestos remediation. Defendant's statement that unnamed Office of General Services officials and their subcontractors "informed [him] that the removal was performed properly and within all regulatory guidelines" is not sufficient on a motion for summary judgment. (Dkt. 59-3 at 2). This is particularly the case where to the contrary, in addition to his own affidavit, Plaintiff has submitted affidavits from seven other inmates who confirm Plaintiff's allegations that during the asbestos removal, there was dust all over the cell block and inmates had trouble breathing as a result. (*See, e.g.*, Dkt. 63-1 at 34, 35, 36, 37, 38, 39, 40 attesting for example: "asbestos dust prominently spread over the floors, walls, and ceilings of the housing unit," "experienced severe mental and emotional hardship with great concern for physical health," "a lot of dust all over the place," "we cannot breath pure air because asbestos fibers everywhere," "asbestos dust spread over the floors, walls, and ceilings in the housing unit," "dust all over the place, we cannot see each other through the curtain of smoke that was in the unit," "a lot of dust was all over the place to the point where we could not breath pure air"). In addition, while not controlling or rising to the

level of expert testimony, Plaintiff's prior licensing in asbestos removal does provide a basis to corroborate his ability to assess the danger to him and other prisoners.

In *Labounty*, the Second Circuit reversed the district court's granting of summary judgment in a case in which a plaintiff alleged dangerous exposure to asbestos, explaining:

> Based on the pleadings, affidavits and other submissions of the parties the relevant facts are as follows: LaBounty claims he was exposed to friable asbestos in his work area and in many common areas of Woodbourne. The asbestos, which lined the pipes in certain areas of the prison, was broken in places (friable) and was constantly airborne. He and other inmates attempted to place a bag and tape over some of the pipes. Defendants acknowledge that the pipes in question are lined with asbestos but argue that the pipes are completely covered and no asbestos is exposed to the air. However, they admit that at times the cover is damaged and some asbestos may be exposed. Such damage, they argue, is quickly repaired. Woodbourne is routinely inspected and has not been cited for any asbestos-related violations. Neither party submitted any documentary evidence to support its position. Defendants failed to produce to the court any reports of inspections of the facilities. Thus, there is a genuine issue of material fact as to whether LaBounty was exposed to friable asbestos.

*LaBounty*, 137 F.3d at 73. So too here is the Court unable to conclude as a matter of law that Plaintiff was not exposed to significant concentrations of asbestos sufficient to support the objective element of this claim.

For all of these reasons, the Court finds that Defendant has not met his burden of establishing that no reasonable jury could find in Plaintiff's favor on his claim that there existed a sufficiently dangerous condition from the asbestos exposure to satisfy the objective prong of an Eighth Amendment claim.

### B. Subjective Element

Having concluded that genuine issues of material fact prevent the Court from concluding that Plaintiff cannot satisfy the objective prong of the Eighth Amendment

deliberate indifference test, it turns to whether Plaintiff has established genuine issues of material fact as to the subjective prong of that test—that is, whether Defendant "acted more than negligently[,]" *Henderson v. Hannah*, No. 3:20-CV-1628 (SRU), 2021 WL 268855, at *4 (D. Conn. Jan. 26, 2021), and whether he was personally involved in the alleged Eighth Amendment violation, *id.*

To satisfy the subjective element, Plaintiff must show "more than mere negligence," *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); rather, he must show that Defendant "kn[ew] of, and disregard[ed] an excessive risk to his health and safety." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013). Plaintiff alleges that he wrote to and complained to Eckert several times while the asbestos abatement was ongoing in his cell block and that he was experiencing physical symptoms from the exposure.

The Court previously observed,

> Even before *Tangreti*, it was "well established that a supervisor's failure to respond to a letter or complaint does not provide a sufficient basis to find that the defendant was personally involved in the deprivation alleged," and "the review, denial or affirmance of a denial of a grievance is insufficient to establish personal involvement" of a supervisor in the denial of a constitutional right[.]

*Lopez v. Chappius*, 6:17-CV-06305 EAW, 2021 WL 859384, at *2 (W.D.N.Y. Mar. 8, 2021)). But not only has Plaintiff provided evidence of Defendant's receipt of letters or grievances and a failure to respond, he also contends that in view of Defendant's position at Wende, genuine issues of fact preclude a determination that Defendant had no personal involvement as a matter of law. Indeed, Defendant's own declaration states that in his capacity as Superintendent of Wende, he "oversaw the running of the facility from an

executive and policy standpoint." (Dkt. 59-3 at ¶ 2). And he goes on to state that "[w]hen in 2020 a concern was raised about friable asbestos potentially being present in the facility, I contacted DOCCS headquarters in Albany and informed them of the concern." (*Id.* at ¶ 3). Defendant contends that DOCCS headquarters then contacted the New York State Office of General Services to address the matter. A reasonable inference can be drawn that Eckert personally was aware of ongoing asbestos abatement at Wende if he admitted that he personally was prompted to contact DOCCS headquarters for assistance assessing the presence of asbestos, he was advised by Plaintiff or others of the unsafe conditions that Plaintiff was exposed to for a significant period of time, and that he failed to take appropriate action to alleviate the unsafe conditions. As in *LaBounty*, these allegations are sufficient at this stage of the proceedings:

> LaBounty claims that he constantly complained about the presence of asbestos to the Inmate Liaison Committee, the Inmate Grievance officer, and the Administrative Officers at Woodbourne, including each defendant. Defendants claim they have no record of such a complaint on file but make no denial that LaBounty orally complained to the committees he named. Again, material issues of fact exist as to whether the defendants had notice and therefore acted with deliberate indifference. In light of these basic factual disputes between the parties, the district court did not err in declining to grant summary judgment.

*LaBounty*, 137 F.3d at 73; *see also Morgan v. Dzurenda*, 956 F.3d 84, 89-90 (2d Cir. 2020) (finding that the district court erred when dismissing plaintiff's Eighth Amendment claim against supervisory officials "on the ground that 'neither was on notice . . . that [the plaintiff] faced an unreasonable risk to his safety,'" and vacating grant of summary judgment to defendants because defendants, while supervisors, could be liable under Section 1983 "for acts they themselves committed" (citing *Farmer*, 511 U.S. at 833)).

In conclusion, summary judgment on Plaintiff's Eighth Amendment claim is not warranted.

## **CONCLUSION**

For the foregoing reasons, Defendant's motion for summary judgment (Dkt. 59) is granted as to any claims arising with respect to asbestos removal in the C Block during 2020, but is in all other respects denied.

SO ORDERED.

                                                                                              ELIZABETH A. WOLFORD
                                                                                              Chief Judge
                                                                                              United States District Court

Dated:       March 9, 2026
                Rochester, New York